WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas McKenzie,<br><br>    Plaintiff,<br><br>v.<br><br>Hero Industries; Hero Products Group;<br>I.C.T.C. Holdings Corporation (WA); I.C.T.C.<br>Holdings Corporation (Canada),<br><br>    Defendants. | CV 09-94 TUC DCB<br><br>**ORDER** |

Plaintiff filed his Complaint on February 19, 2009. He appears pro se. On March 23, 2009, Defendants filed a motion to dismiss. The Court held the motion in abeyance and ordered Defendant I.C.T.C. Holdings Corporation (WA) to show cause why default should not be entered against it for failing to file an Answer and ordered Plaintiff to file a Response to the Motion to Dismiss. Both parties followed the directives of the Court, and on April 11, 2009, Defendants supplemented the Motion to Dismiss by filing a second Motion to Dismiss. All issues have been fully briefed. The Court denies the Application for Entry of Default against I.C.T.C. Holdings Corporation (WA) and the Motion to Dismiss for the reasons explained below.

**Introduction**

Thomas J. McKenzie ("Plaintiff") is a resident of Arizona and the legal owner of all rights and interests in United States Patent No. 5,468,383, "Fluid Filter Holder"("the 383 patent"). I.C.T.C. Holdings Corporation (WA) is a corporation located in Snohomish, WA and is a wholly owned subsidiary of I.C.T.C. Holdings Corporation (Can), which is a

Canadian corporation whose principle place of business is Delta, British Columbia, Canada. HERO Products Group is a working group of I.C.T.C. (Can) and is not an independent business entity. HERO Industries does not exist as an entity.

Plaintiff claims Defendants negotiated for and received from Plaintiff twelve free Fluid Filter Holders manufactured under the 383 patent in compliance with the notice provisions of 35 U.S.C. §287. Plaintiff further claims that Defendants directly and deliberately infringed on the 383 patent by the production and sale of the "Intake Syphon Cage." Plaintiff seeks injunctive relief under 35 U.S.C. § 283 and monetary damages under 35 U.S.C. § 284.

The Defendants ask the court for dismissal under Rules 12(b)(2), (3), (4) and (5) for lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, or alternatively to transfer venue to the United States District Court for the Western District of Washington. Defendants admit I.C.T.C. (WA) was properly served under Fed. R. Civ. P. 4. However, Defendants contend that service of process was insufficient for I.C.T.C. (Can).

The Court finds that it has personal jurisdiction over both the Canadian and Washington Defendants and that both have been properly served. This Court is a proper venue for the action. The Court denies the Defendants' Motion to Dismiss, except as to the non-entity HERO Industries. All other pending motions are denied as moot. The case will be set for a Rule 16, case management scheduling conference. Fed. R. Civ. P. 16.

**Discussion**

**I. Personal Jurisdiction**

The Court denies Defendants' 12(b)(2) motion to dismiss for lack of personal jurisdiction. The Court finds that it has general and specific personal jurisdiction over the Defendants.

It is the burden of the Plaintiff to demonstrate personal jurisdiction. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 379 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S.

585 (1991). When a jurisdictional ruling is based solely on affidavits, dismissal is appropriate only when a plaintiff has failed to make a prima facie showing of personal jurisdiction. *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 850 (9th Cir. 1993). "[T]he plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

To determine whether personal jurisdiction exists, the court must ask whether the forum state's long arm statute permits service of process and whether the assertion of personal jurisdiction would violate due process. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)(*citing Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)).

Arizona's long arm statute reads as follows:

> A court of this state may exercise personal jurisdiction over parties, whether found within or without the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States. . .

Ariz. R. Civ. P. 4.2(a). Because Arizona's long arm statute is coextensive with constitutional due process limits, the inquiry collapses into the single question of whether finding jurisdiction over the defendant is consistent with due process. *Inamed,* 249 F.3d at 1360.

To satisfy the due process clause of the Constitution, the Defendant must have "certain minimum contacts such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v. Washington*, 326 U.S. 310, 316 (1945). *International Shoe* and its progeny created a two-part test: 1) courts must look to see if there are sufficient contacts to establish that a defendant could "reasonably anticipate being haled into court" in the forum state, and 2) courts must determine if the exercise of jurisdiction by the forum state would offend "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474- 476 (1985). To have personal jurisdiction over a defendant, the Court must find it has either general or specific jurisdiction.

3

## A. Specific Jurisdiction

Specific personal jurisdiction arises when a defendant has sufficient "minimum contacts" with the forum state arising from, or related to the cause of action for which the plaintiff brings suit. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). The court uses a three-pronged test to find specific jurisdiction: (1) whether the defendant "purposefully directed" its activities to residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair." *Id.* at 802 (*citing Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). If the plaintiff can satisfy the first two prongs, the defendant must then "'present a compelling case' that the exercise of jurisdiction would not be reasonable. " *Id.* (*citing Burger King*, 471 U.S. at 476-78). "[J]urisdiction may not be avoided merely because the defendant did not *physically* enter the forum state." *Burger King,* 471 U.S. at 476 (*emphasis in original*). The inquiry focuses on the commercial actor's efforts and whether or not they are "purposefully directed toward residents of another state." *Id.*

For example, in *Burger King* the Court found personal jurisdiction existed because the defendant "reached out beyond" the borders of its state and negotiated a franchise agreement with a Florida corporation. *Id.* The Court held that the "quality and nature" of the relationship to the company in Florida could in no sense be viewed as "random," "fortuitous," or "attenuated," and that the franchise agreement created a substantial connection with Florida. *Id.* at 479-80.

Specific jurisdiction can be found when a defendant knowingly and deliberately makes contacts with the plaintiff in the forum state. *Brainerd v. Governors of the University of Alberta,* 873 F.2d 1257, 1259 (9th Cir. 1989). In *Brainerd*, the court found that defendant purposefully directed its activities at the forum state when it received two phone calls and responded to a letter from the plaintiff. *Id.* Because the cause of action stemmed from those contacts, the Court found specific jurisdiction over a foreign defendant. *Id.* The Court in

1 *Brainerd* recognized a need to protect citizens of Arizona from injury caused within the state. *Id.*; *Akro Corp. v. Luker,* 45 F.3d 1541, 1547 (Fed. Cir. 1995) (finding specific jurisdiction over a non-resident in a patent violation suit based on correspondence between both parties).

A foreign act that is both aimed at and has an effect in the forum state satisfies the purposefully directed portion of the specific jurisdiction test. *Bancroft & Masters*, *Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). To meet the effects test, the defendant must have committed an act that was expressly aimed at the forum state. *Id.* Though some harm must occur in that state, it does not necessarily have to be the brunt of the harm. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme,* 433 F.3d 1199, 1207 (9th cir. 2006). Conduct is expressly aimed at a forum state when a defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state. *Bancroft,* 223 F.3d at 1087.

In the case at hand, the Defendant has sold only twenty of the alleged infringing products in Arizona in the last six years. Customers can either place an order through an independent sales representative who then places the order with I.C.T.C. (WA), or customers can directly order the product from I.C.T.C. (Can). The presence of independent sales representatives in Arizona suggests Defendants purposefully direct this product into Arizona. However, the small number of the "Intake Syphon Cage" kits sold in Arizona suggests the product may not be purposefully directed into Arizona, but is instead only sold here in response to unsolicited requests from Arizona residents.

Plaintiff claims that the Defendants[1] "negotiated for" twelve free versions of his Fluid Filter Holder. The word "negotiate" is defined as: "to communicate with another party for the purpose of reaching an understanding." *Blacks Law Dictionary* (8th ed. 2004). Acts

---

[1]This allegation must be against Defendant I.C.T.C. Holdings Corporation (Can) because Defendants admit that I.C.T.C. (WA) consists of a registered agent and an independent contractor who is hired to pick up I.C.T.C. Can. mail at a post office in Washington and deliver it to the Canadian office. (Response to OSC (doc. 13) at 2-3.)

5

of negotiation demonstrate purposeful direction of meaningful activities toward the Plaintiff, a resident in the forum state, Arizona. The quality and nature of acts involving patent negotiations culminating in Plaintiff sending 12 prototypes to Canada cannot be characterized as fortuitous or random.

The cause of action clearly "arises out of" purposefully directed activities. The Plaintiff alleges that after negotiating for and receiving his product, Defendants violated his patent rights by the production and sale of the Intake Syphon Cage, some of the sales occurring in Arizona.

The final prong of the test for exercising specific personal jurisdiction asks whether it is reasonable and fair. In other words, would the Defendants reasonably expect to be haled to court in Arizona? Defendants answer, no because fewer than one percent of sales of the Intake Syphon Cage in the United States occurs in Arizona, with only 31 units being sold in the last three years for a total of $79.19. However, the Defendants deliberately entered into negotiations with an Arizona resident regarding a patent that is now the subject of this lawsuit. Defendants purposefully directed contacts to a resident of this state, they would reasonably expect to face suit in Arizona especially one related to the subject of their contacts.

Additionally, the contacts involved business transactions that have financially benefitted Defendants and disadvantaged the Plaintiff, and indirectly the state economy where Plaintiff resides. It is fair to exercise personal jurisdiction over Defendants because Arizona has a strong interest in providing a forum to address economic injury to its residents. *Akro*, 45 F.3d at 1547 (explaining Minnesota had interest in providing forum for resident claiming foreign corporation was preventing it from manufacturing and marketing its product); *Graham Engineering Corp. V. Kempt Products Ltd.,* 418 F. Supp. 915, 921-22 (Ohio 1976) (discussing economic consequences on the state as a basis for exercising jurisdiction in the Ohio courts).

The Court finds there is specific jurisdiction over the Defendants.

**B. General Jurisdiction**

In a controversy unrelated to defendant's contacts with the forum state, general personal jurisdiction arises over a non-resident defendant when the defendant engages in "continuous and systematic general business contacts" in the forum state. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006); *Schwarzenegger,* 374 F.3d at 801 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). The test for general jurisdiction has been expressed many times as a determination of whether the defendant has a continuous and substantial presence in the forum state so that being haled to appear in the state would not offend traditional notions of fair play and substantial justice. *Best Lock Corp. v. Ilco Unican Corp.*, 32 U.S.P.Q.2d 1223 (S.D. Ind. 1994). General jurisdiction should be an exacting standard as it permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world. *See Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases where general jurisdiction was denied despite defendant's significant contacts with the forum state). "The standard for general jurisdiction is high; contacts with a state must 'approximate physical presence'" *Tuazon*, 433 F.3d at 1169 (citing *Bancroft*, 223 F.3d at 1086).

In *Schwarzenegger*, the California court failed to find general jurisdiction over a car dealership in Ohio whose contacts included purchasing automobiles from a California importer, retaining the services of California-based training and direct mail marketing companies, and maintaining a website accessible by California residents. 374 F.3d at 801. In *Best Lock Corp.,* a patent infringement case, the defendant sold over $500,000 worth of products through the efforts of independent sales representatives to 37 customers in Indiana. 32 U.S.P.Q.2d at 1223. Despite this resulting in less than 1% of the defendant's total sales, the court found general jurisdiction. *Id.* "With that much activity it cannot be said that Ilco would not fairly expect to be haled into court in Indiana" *Id.* In *Tuazon*, the court found general jurisdiction over the defendant when it derived $145-240

7

million in annual revenues from that state and maintained an office and staff of permanent employees. 433 F.3d at 1169.

Here, the Plaintiff has provided sworn affidavits stating that Defendants sell their products in multiple locations throughout Arizona, including the big-box retailer Home Depot. If this is true, the Defendants have a continuous and systematic presence in the forum state. With sales activity in such multiple retail outlets, Defendants can be expected to face suit in Arizona. Defendants admit that all sales of products in the United States are made through I.C.T.C. (WA). (Motion to Dismiss (doc. 19) at 3.) Therefore, the Court finds general personal jurisdiction over both I.C.T.C. Defendants.

The Court denies Defendants' 12(b)(2) motion to dismiss for lack of personal jurisdiction.

**II. Proper Venue**

The Court finds venue is proper. The Defendants' 12(b)(3) motion to dismiss for improper venue and their motion to transfer venue are denied.

In a patent case, venue is proper if the forum state can find personal jurisdiction over the defendant. *Trintec Industries, Inc. V. Pedre Promotional Prod. Inc,* 395 F.3d 1275, 1280 (Fed. Cir. 2005); *see Walter Kidde Portable Equipment v. Universal Security Instruments*, 304 F. Supp. 2d 769, 770 (N. Carolina 2004) (finding venue was proper in a patent case when the court had personal jurisdiction over defendant for selling the infringing product through distributors in that forum state). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

A district court can transfer any civil action to any other district court in the interest of justice. 28 U.S.C.A. §1404 (2006). For patent cases, 28 U.S.C.A. §1400 provides:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of

8

infringement and has a regular and established place of business.

28 U.S.C.A. § 1400(b) (2006). Congress further stated that a defendant "resides" in a forum state where "it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c) (2006). The language in § 1391(c) reveals a "clear intention" to supplement § 1400(b). *VE Holding Corp. v. Johnson Gas Appliance Co.* 917 F.2d 1574, 1580 (Fed. Cir. 1990). In *VE Holding*, the court performed a detailed analysis of historical interpretations of both §1400 (b) and § 1391(c). *Id.* It concluded that in the 1988 amendment to §1391(c), Congress intended to apply the definition in §1391 of "resides" to § 1400(b). *Id.* at 1577-1581.

In this case, the Court finds personal jurisdiction exist over the Defendants, therefore, venue is proper in this Court. The 12(b)(3) motion to dismiss for improper venue and the motion to transfer venue are denied.

**III. Sufficient Service of Process**

The Court finds service of process to be sufficient and denies Defendants' 12(b)(4) and (5) motions to dismiss for insufficient process and insufficient service of process. Defendants admit that I.C.T.C. (WA) was properly served. (Motion to Dismiss (doc. 19) at 8.) The dispute arises over proper service of I.C.T.C. (Can).

To properly serve a corporation beyond any judicial district in the United States, the plaintiff must do so in accordance with the Hague Convention if service is done within a country that abides by the Convention. Fed R. Civ. P. 4(f)(1). Canada is such a country. Although the Hague Convention does not expressly provide for service by mail, the Ninth Circuit has concluded that service by certified mail is not excluded by the Convention. *Brockmeyer v. May*, 383 F.3d 798, 802 (9th Cir. 2004). The Hague Convention states that a person may send judicial documents by mail directly to persons abroad unless the country of origin objects to such method. *Service of Process Abroad,* 122 F.R.D. 63, 70 (West 1989). Canadian law defers to the province when determining

9

proper service of a corporation. *Service of Documents SOR/1998-106,* §130(1)(c). British Columbia law allows for service on a corporation by personal service or in any manner provided by the *Business Corporations Act*. *British Columbia Rule of Court* 11(2)(b) (2009). The *Business Corporations Act* allows for service to a corporation by "registered mail to the registered office of the corporation". *Canada Business Corporations Act*, R.S., ch C-44 (1985). Therefore, neither Canadian nor British Columbia law directly objects to service by mail. Instead, service by registered mail is allowed.

Therefore, I.C.T.C. (Can) has been properly served under the Laws of the United States, Canadian Law, and British Columbia Law. The Court denies Defendant's 12(b)(4) and (5) Motion to Dismiss for insufficient service and insufficient service of process.

## Conclusion

The Court denies Defendants' motions to dismiss under Rules 12(b)(2), (3), (4), and (5), except for dismissing non-entities HERO Industries and HERO Products Group. The Court denies Defendants' motion to transfer venue under 28 U.S.C. 1404 (a).

**Accordingly,**

**IT IS ORDERED** that the Application for Entry of Default (document 2) is DENIED.

**IT IS FURTHER ORDERED** that Motions to Dismiss (documents 5 and 19) are DENIED, except for dismissal of non-entities Defendants HERO Industries and HERO Products.

**IT IS FURTHER ORDERED** that the Motion to Transfer Venue (document 19) is DENIED.

/////

/////

/////

**IT IS FURTHER ORDERED** that all other pending motions (documents 12, 28, and 29) are DENIED AS MOOT.

DATED this 29th day of July, 2009.

David C. Bury
United States District Judge